UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOUAKHAM SOUVANNAKOUM,<br><br>　　　　Plaintiff,<br>v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>　　　　Defendant. | Case No. EDCV 07-934-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the four disputed issues listed in the Joint Stipulation ("JS").[2]

**I.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 7, 8.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the ALJ properly considered the Mental Disorder Questionnaire Form completed by Dr. Diamreyan;
2. Whether the ALJ properly considered the Mental Disorder Questionnaire Form completed by Dr. Villar;
3. Whether the ALJ properly considered the type, dosage, effectiveness, and side effects of Plaintiff's medication; and
4. Whether the ALJ posed a complete hypothetical question to the vocational expert ("VE").

(JS at 3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.
## DISCUSSION

**A.     Procedural Background.**

Plaintiff, a 55-year-old man, appeals a denial of Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") benefits. Plaintiff asserts an onset date of disability of June 7, 1991, due to post-traumatic stress disorder ("PTSD") and depression. (JS at 2.)

Plaintiff originally filed an application for SSDI on June 7, 1991, for which he ultimately was awarded benefits. (Administrative Record ("AR") at 37.) However, upon review, the Social Security Administration ("SSA") determined that as of November 1, 2003, Plaintiff was no longer disabled and his benefits were ceased. On December 3, 2003, Plaintiff requested reconsideration of that decision. (Id. at 230.) On September 30, 2004, a hearing was held in San Bernardino, California, before an Administrative Law Judge ("ALJ"). (Id. at 619.) On November 15, 2004, an Unfavorable Decision issued (id. at 475), and on January 12, 2005, Plaintiff timely filed a Request for Review of the Hearing Decision (Id. at 484). The Appeals Council granted review of the decision and on November 9, 2005, remanded the case back to the ALJ. (Id. at 489.)

On February 9, 2005, Plaintiff filed subsequent applications for SSDI and SSI, which were incorporated herein. (Id. at 552.) On August 14, 2006, a remand hearing was held before the same ALJ who previously heard the matter. (Id. at 640.) On January 10, 2007, an Unfavorable Decision issued (id. at 12), and on January 31, 2007, Plaintiff timely filed a Request for Review of the Hearing Decision (Id. at 10). The Appeals Council denied review on June 8, 2007. (Id. at 7; see also JS at 2.)

**B.     The ALJ Properly Considered the Treating Physician's Opinion.**

3

### 1. Dr. Diamreyan.

Plaintiff contends the ALJ failed to properly consider the opinions of his treating physician, Dr. Ochuko G. Diamreyan, who on November 9, 2005, completed a Mental Disorder Questionnaire Form on behalf of Plaintiff. (AR at 610.) The Court does not agree.

In the questionnaire, Dr. Diamreyan stated that Plaintiff experiences depression, auditory hallucinations, poor sleep, nightmares, poor memory, flashbacks, and paranoia. (Id.) Plaintiff apparently presented as withdrawn and dejected looking, anxious and tense. (Id. at 611.) His concentration was poor, as was his fund of knowledge, insight, and judgment. (Id.) Dr. Diamreyan also reported that Plaintiff was experiencing paranoid ideation about communists being after him. (Id. at 612.) Plaintiff reported that he yells and gets angry if stressed. (Id.) Dr. Diamreyan diagnosed Plaintiff with PTSD and a major depressive disorder with a global assessment of functioning ("GAF") score of 40.[3] (Id. at 614.)

In his decision, the ALJ relied on the well-documented report of psychiatrist Linda M. Smith, M.D. (Id. at 495-506). As a result of that report, the ALJ properly concluded that Plaintiff was a poseur with no credibility. (Id. at 19-20.) Dr. Smith examined Plaintiff on June 20, 2006, and concluded that his behavior was "entirely staged" for her benefit. (Id. at 503.) Indeed, Dr. Smith stated that Plaintiff's behavior was "very consistent with lay people in this clinic who are attempting to feign a psychiatric disorder." (Id.)

Dr. Smith was suspicious when Plaintiff's wife "pressed quite hard" to come into the interview room with Plaintiff. (Id. at 496.) As noted by Dr. Smith, it was

---

[3] A GAF score of 40 is described as "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Ass'n ed., 4th ed. 2000).

not an uncommon practice for family members to expect to come in and speak for a claimant, in an attempt to portray the claimant as too impaired to even speak. (Id. at 496, 500.) As such, Dr. Smith told Plaintiff's wife that it was not possible for her to be present. (Id. at 496.) Dr. Smith found that Plaintiff nevertheless did initially attempt to portray himself as being unable to speak, putting his head in his hands and making some "fairly theatrical displays" in lieu of answering Dr. Smith's questions. (Id.) However, after Dr. Smith informed Plaintiff that Social Security may not be able to finish his claim if he could not provide any information, he then "started to talk," even using long, detailed, and complex answers when he wished. (Id. at 496, 500).

After Plaintiff suddenly became more responsive, Dr. Smith inquired into his allegation that he would experience visual or auditory hallucinations. (Id. at 497.) In response, Plaintiff stated that this would happen "in his dreams." (Id.) As noted by Dr. Smith, Plaintiff was not describing "actual hallucinations," but dreams. (Id. at 497, 501.) When Dr. Smith attempted to test Plaintiff's memory, he "immediately" claimed that he could not recall the three words that were given to him five minutes prior. (Id. 502.) After Dr. Smith named the three words again, he still claimed he could not remember any of them. (Id.) Plaintiff also displayed "very long 'dramatic' struggles before saying he couldn't remember any of the words." (Id.) Dr. Smith found that Plaintiff's behavior was "not typical for actual memory problems." (Id. at 501.) Dr. Smith also found Plaintiff not credible when he could not correctly state the day, date, or year. (Id. at 501-02.) After a long "struggle" to name each of these, the best Plaintiff could do was "Thursday, May 25, 2007," even though the actual date was Tuesday, June 20, 2006. (Id. at 502.) When Dr. Smith asked Plaintiff to name the current President, he initially "attempted to evade" the question by claiming he had a headache. (Id.) After Dr. Smith asked again, however, Plaintiff said, "I remember now. Clinton." (Id.) Dr. Smith found that Plaintiff was not credible when he displayed an "extremely long

5

'struggle'" before he could remember that he had two children or that he was currently in the State of California. (Id.) Plaintiff's "protruding belly" also belied his allegation that others had to "force" him to eat. (Id. at 497).

Moreover, Dr. Smith noted that Plaintiff's behavior was "much different" when he thought he was not being observed. (Id. at 495.) Dr. Smith observed that, in the parking lot, Plaintiff was "quite relaxed" and "quite casual," exhibiting "none of the behavior that [she] saw in the interview room." (Id. at 500.) Rather, Plaintiff was "casually strolling across the parking lot with the people who came with him," and was "chatting with them." (Id.)

Dr. Smith concluded that there was no objective evidence for Plaintiff's claims and that there was instead "substantial evidence of exaggeration and manipulation" (Id. at 500). Dr. Smith stated that there was "actually no evidence of any psychiatric disorders in this claimant at this time," as the "entire interview appear[ed] to have been staged for [her] benefit." (Id. at 504.) She "certainly [did] not see evidence that he [was] impaired in his ability to work, from a psychiatric standpoint." (Id.)

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where, as here, the treating

physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). Contrary opinions of examining and non-examining physicians "serve as additional specific and legitimate reasons" for rejecting the opinions of treating and examining physicians. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); see also Johnson v. Shalala, 60 F.3d 1428, 1423, 1433 (9th Cir. 1995) (self-contradictory nature of treating physician opinion was "clear and convincing" reason for rejection).

In this case, the ALJ did consider the later, April 18, 2006, report of Dr. Diamreyan, a report that Plaintiff presented to him at the hearing. (AR at 20, 646.) The ALJ specifically noted that in addition to his finding of Plaintiff's complete lack of credibility, which is not at issue herein, this report of Dr. Diamreyan was "unpersuasive and incredible" because it checked off "markedly" or "extremely limited" in every category of mental function, essentially indicating that Plaintiff had no useful mental function and implying Petitioner was at the level of requiring institutionalization or a "keeper." (Id. at 20, 617-18.) The ALJ noted that even the doctor's own progress notes failed to support this "egregiously exaggerated expression of mental incapacity." (Id. at 20.) Those notes, dated from January 12, 2006, and July 20, 2006, indicated that Plaintiff only had "mild" depression which had decreased with treatment, was sleeping "well," was not experiencing side effects from his medication, and was not hearing voices or exhibiting paranoia. (Id. at 20, 518-23.) An ALJ may properly reject medical opinions that are inconsistent with contemporaneous findings. Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995).

Plaintiff argues that the ALJ should also have articulated specific reasons for rejecting Dr. Diamreyan's earlier, November 9, 2005, opinion of disability. (JS at

5.)  However, an ALJ is not required to "discuss every piece of evidence" so long as the decision was supported by substantial evidence.  <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003).  Rather, the ALJ need only explain why "significant probative evidence has been rejected."  <u>Vincent ex rel. Vincent v. Heckler</u>, 739 F.2d 1393 (9th Cir. 1984).

      The Ninth Circuit has found that medical reports that are most recent are highly probative.  <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001) (<u>citing</u> <u>Stone v. Heckler</u>, 761 F.2d 530, 532 (9th Cir. 1985)) (medical evaluations even prepared several months before the hearing in a case where the claimant had a worsening condition were not substantial evidence sufficient to rebut more recent conclusions by a treating doctor).  The ALJ explained that after reviewing the 2006 progress notes of Dr. Diamreyan, who was not board-certified in psychiatry or anything else, he gave the doctor's records, which "offer no support for his florid conclusions," "no weight."  (AR at 20.)  The report at issue here, dated six months earlier than the report discussed by the ALJ, simply was not probative.  The ALJ gave specific and legitimate reasons for discrediting Dr. Diamreyan's more recent report and notes.  No explanation was required for the implied rejection of the earlier, even less probative, report.  Thus, there was no error.

      Moreover, even if there was error, it was harmless.  <u>See</u> <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).  It appears to the Court that the reasons stated by the ALJ for rejecting Dr. Diamreyan's later disability opinions apply with equal force to Dr. Diamreyan's "opinions" as expressed in the 2005 Mental Disorder Questionnaire Form, which appear to be little more than his general observations of Plaintiff and a recitation of Plaintiff's self-reporting of self-serving symptoms.

      **2.**    **Dr. Villar.**

On February 28, 2005, Dr. Romeo D. Villar, a psychiatrist, also completed a Mental Disorder Questionnaire Form on behalf of Plaintiff. (AR at 602-06.) Dr. Villar stated that Plaintiff is depressed, feels hopeless, helpless, and has had an auditory hallucination telling him to kill himself. (Id.) Plaintiff had dysphoric affect, poor eye contact, and looked very depressed. (Id. at 603). His concentration was poor, he was very subdued, and he gets paranoid. (Id. at 604.) Dr. Villar diagnosed Plaintiff with major depression with psychotic features. (Id. at 606.)

Plaintiff contends the ALJ failed to provide specific and legitimate reasons for rejecting this opinion of Dr. Villar. (JS at 9.) While this is true, as with Dr. Diamreyan's report, the Court finds any error to be harmless.

In his prior November 14, 2004, decision, the ALJ discussed Dr. Villar's previous medical report completed in December 2003. The ALJ's 2004 decision was incorporated by reference into his final decision on remand, as supplemented by his present decision. (AR at 17.) In his November 2004 decision, the ALJ noted that the evidence of record did not establish any significant current treatment relationship between Plaintiff and Dr. Villar. (Id. at 480.) Rather, only two visits were documented for the time period at issue (Id. at 447-50, 480), even though Plaintiff's wife claimed that Plaintiff saw Dr. Villar once a month (Id. at 480-81; 633). Indeed, the ALJ noted that by the second documented visit Plaintiff had already experienced improvement with treatment. (Id. at 450, 479); see Johnson, 60 F.3d at 1433 (ALJ properly analyzed contemporaneous findings in evaluating a medical source).

In his 2004 decision, the ALJ also noted that the testifying medical expert, Joseph M. Malancharuvil, Ph.D., concluded that Dr. Villar's findings were inconsistent with the medical evidence of record. (AR at 480); see 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (2007) (the weight afforded a medical opinion depends on its consistency with the record as a whole). In Morgan v. Comm'r of

Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999), the Ninth Circuit held that the opinion of a non-examining, testifying medical advisor may serve as substantial evidence when it is supported by other evidence in the record and consistent with it. Dr. Malancharuvil did not see "any objective test or evaluations done by the doctor." (AR at 624.) Rather, Dr. Malancharuvil testified that he believed Dr. Villar "simply accept[ed] the reporting of the claimant." (Id.); see Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432, 433-434 (9th Cir. 1988) (holding that the ALJ properly rejected physician opinions that were based on a claimant's subjective complaints, not on clinical evidence). Dr. Malancharuvil also found that Dr. Villar's opinions were inconsistent with the findings of Dr. Smith, who had previously examined Plaintiff on September 19, 2003. (AR at 404-11); see Tonapetyan, 242 F.3d at 1149 (stating that the report of a consultative examiner may serve as an additional specific and legitimate reason for rejecting a treating physician's opinion). Dr. Malancharuvil testified that Dr. Smith's evaluation was "certainly more thorough" than Dr. Villar's reporting. (AR at 119-26, 404-11, 447-49, 624-25.) Dr. Malancharuvil also noted that Plaintiff was able to work in the past despite his alleged PTSD. (Id. at 406, 626); see Gregory v. Bowen, 844 F.2d 664, 667 (9th Cir. 1988) (impairment that remained the same had not previously prevented claimant from working).

While Plaintiff argues that Dr. Villar's later questionnaire, dated February 28, 2005 (AR 602-06), required additional discussion from the ALJ, Plaintiff has not cited any additional documentation of significant treatment by Dr. Villar. See Howard, 341 F.3d at 1012 (holding that an ALJ is not required to "discuss every piece of evidence"). As such, Dr. Villar's February 2005 questionnaire suffers from the same lack of contemporaneous support as his previous report. (AR at 480.) Also, as with Dr. Diamreyan's report, the opinions expressed by Dr. Villar in the 2005 Mental Disorder Questionnaire Form, appear to be little more than his general observations and a recitation of Plaintiff's self-reporting of self-serving

symptoms. Most significantly, as discussed above, Plaintiff's second consultation with Dr. Smith on June 20, 2006, revealed substantial additional evidence of exaggeration and manipulation on Plaintiff's part with regard to his allegations of psychiatric limitations. As such, medical evidence obtained since the ALJ's first decision demonstrated that Dr. Villar's opinions continue to be out of step with the medical evidence of record.

Finally, in <u>Magallanes</u>, 881 F.2d at 755, the Ninth Circuit held that an ALJ need not recite a magical "incantation" expressly rejecting a physician's opinion. Rather, a reviewing court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." <u>Id.</u> As such, it is proper for a reviewing court to read an ALJ's discussion of one physician and draw inferences relevant to other physicians "if those inferences are there to be drawn." <u>Id.</u> In the present case, the affirmative evidence of malingering documented by Dr. Smith, the ALJ's thorough rejection of the extreme report of Dr. Diamreyan, and the ALJ's well-supported rejection of Dr. Villar's December 2003 report, all lead to a proper inference likewise supporting the rejection of Dr. Villar's February 2005 questionnaire.

C.   **<u>The ALJ Did Not Err with Respect to Consideration of Alleged Side Effects of Plaintiff's Medication.</u>**

Plaintiff contends that on March 10, 2006, a treating physician increased his dosage of Lexapro, a medication used to treat depression.[4] (JS at 12; AR at 519.) On April 18, 2006, he notes that the physician added Remeron, also used to treat depression. (<u>Id.</u>; AR at 519.) He contends that "it is clear that the treating physician was searching for the proper combination of medication in order to

---

[4] Although Dr. Diamreyan increased the dosage of Lexapro to 40 mg in March 2006, in April he decreased it back to 20 mg (AR at 519), and in July 2006 he discontinued it entirely. (<u>Id.</u> at 522.)

properly treat the Plaintiff['s] mental impairment." (Id. at 12.) He claims, therefore, that the ALJ failed to properly evaluate and consider the type, dosage, effectiveness and side effects of this combination of medicines which "can impact the Plaintiff's ability to perform and sustain full time competitive work." (Id. at 12-13.) The Court does not agree.

Under Ninth Circuit law, the ALJ must "consider *all* factors that might have a 'significant impact on an individual's ability to work.'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993) (quoting Varney v. Sec'y of Health & Human Servs., 846 F.2d 581, 585 (9th Cir.), relief modified, 859 F.2d 1396 (1988)). Such factors "may include side effects of medications as well as subjective evidence of pain." Erickson, 9 F.3d at 818. When the ALJ disregards the claimant's testimony as to subjective limitations of side effects, he must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medications. See Varney, 846 F.2d at 545; see also Muhammed v. Apfel, No. C 98-02952 CRB, 1999 WL 260974, at *6 (N.D. Cal. 1999).

In this case, there was no indication in the medical records that Plaintiff reported any side effects from his medication to his treating physicians. In fact, Dr. Diamreyan, whose records are the ones to which Plaintiff refers, indicates Plaintiff was not experiencing side effects. (See AR at 20, 522, 523); see Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not err in failing to "explicitly address the drowsiness side-effect of [the claimant's] medication" in making an RFC determination as "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints"); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (alleged side effects need not be considered where no objective evidence supported allegations). In fact, in May 2006, Plaintiff reported he was sleeping well with the medications, and in June 2006, his depression had apparently decreased. (AR at 523.)

1  Accordingly, there was no error in the ALJ's failure to further mention the
2  alleged side effects of Plaintiff's medication.

**D.     The Hypothetical Posed to the Vocational Expert Was Proper.**

Plaintiff contends that the ALJ erred because the hypothetical questions posed to the VE failed to take into account any mention of the impairments and functional limitations determined by Drs. Diamreyan and Villar. (JS at 13-14.) The Court disagrees.

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist. See, e.g., Magallanes, 881 F.2d at 756-57; Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Thus, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock, 240 F.3d at 1163-64 (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

As previously discussed, the record evidence did not support the conclusions of Dr. Diamreyan or Dr. Villar. Accordingly, there was no error in the ALJ's hypothetical questions to the VE which did not include these limitations. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

# IV.
# **ORDER**

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED:  March 9, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge